IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BILLY DALE SCHIMMEL,
      Petitioner,

vs.                               Case No. 3:07cv521/MCR/EMT

WALTER McNEIL,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 8). Respondent filed an answer and relevant portions of the state court record (Doc. 22). Petitioner filed a reply (Doc. 25).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.       BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 22, Exhibits).[1] Petitioner was charged in the Circuit Court for Escambia County, Florida, Case No. 2000 CF 005280A, with possession of a firearm by a convicted felon (Ex. B at 9). Following a bench trial on May 10, 2002, Petitioner was found guilty as charged

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 22).

(Ex. B at 67; Ex. C).[2]   On February 10, 2004, Petitioner was sentenced to five (5) years of imprisonment, to run concurrently with his sentence in Case No. 2000 CF 002456C (Ex. B at 575–83).[3]  Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA") (Exs. D, E, F).  On October 19, 2006, the First DCA affirmed the judgment of conviction per curiam without written opinion (Ex. G).  Schimmel v. State, 940 So. 2d 430 (Fla. 1st DCA 2006) (Table).  Petitioner did not seek further review by the Florida Supreme Court or the United States Supreme Court.

On August 11, 2005, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, in the trial court (Ex. H at 1–14).  The trial court denied the motion on March 16, 2007 (id. at 25–31).  Petitioner appealed the decision to the First DCA (Exs. I, J).  On October 17, 2007, the First DCA affirmed per curiam without written opinion, with the mandate issuing December 6, 2007 (Exs. K, N).  Schimmel v. State, 968 So. 2d 1022 (Fla. 1st DCA 2007) (Table).

On December 6, 2006, while Petitioner's Rule 3.850 motion was pending, Petitioner filed a motion to mitigate sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure, in the trial court (Ex. O).  The trial court denied the motion on December 13, 2006 (Ex. P).

Petitioner filed the instant habeas action on December 10, 2007 (Doc. 1 at 7).[4]  Respondent concedes that the petition is timely (Doc. 22 at 5).

II.    STANDARD OF REVIEW

---

[2] Petitioner was charged in a one-count information with Possession of a Firearm by a Convicted Felon (Ex. B at 9–10).  More specifically, the information alleged that Petitioner possessed "one or more"firearms, and it listed and described by make and model six firearms, any one of which could have been possessed by Petitioner (see id.).  The trial court granted the defense's motion for judgment of acquittal as to one of the six firearms identified in the fourth amended information, on the ground that the evidence was not sufficient for the trier of fact to find that Petitioner possessed the Intratec model AB10 9-mm pistol (see Ex. B at 9, 18–19).

[3] In Case No. 2000 CF 002456C, Petitioner was convicted of one count of unlawfully conducting a business enterprise, two counts of organized fraud, three counts of failure to secure worker's compensation, one count of grand theft of $300.00 or more but less than $5,000.00, and two counts of tampering with evidence (Ex. B at 575–83).

[4] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Case No. 3:07cv521/MCR/EMT

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[5] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state

_____

[5] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Case No. 3:07cv521/MCR/EMT

court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable

application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see, e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and

concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[6] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In <u>Picard v. Connor</u>, the Court held that, for

---

[6]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
          (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[7] The Supreme Court explained, "[i]f a habeas petitioner wishes

---

[7] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66.   Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The Baldwin Court commented that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32.  With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"   McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[8]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court

---

[8] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id.*. A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[9] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

---

[9] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.

Id.

Within this framework, the court will review Petitioner's claims.

IV. PETITIONER'S CLAIMS

A. Ground One: Ineffective assistance of trial counsel based upon counsel's failure to move to dismiss the charging document.

In Ground One, Petitioner contends defense counsel was ineffective for failing to file a pre-trial motion to dismiss the information on the ground that the prosecutor engaged in selective prosecution (Doc. 8 at 5, 8–9). Petitioner states the government followed "unusual discretionary procedures" in deciding to prosecute him and "singled [him] out" for prosecution even though the government knew that one of his employees had violated the law (id. at 8–9 & n.1). He further states his wife, Debbie Schimmel, had initiated civil proceedings and a Florida Bar complaint against Russell Edgar, the prosecutor (id. at 8). Petitioner states defense counsel knew that the

evidence showed that the weapons confiscated from Petitioner's home belonged to his wife or son, and counsel knew about the civil proceedings and Florida Bar complaint; thus, counsel was aware of a sufficient basis for seeking dismissal of the information based upon "possible discriminatory selection . . . for prosecution" (*id.* at 8–9). Petitioner contends if counsel had moved to dismiss the information, it is likely the trial court would have dismissed the charge (*id.* at 9).

Respondent contends although Petitioner raised this issue as Ground One in his Rule 3.850 motion, he did not argue it in his brief on appeal of the trial court's denial of the motion; therefore, Petitioner failed to properly exhaust the claim (Doc. 22 at 7–8). Respondent argues that under Florida law, when a post-conviction motion is summarily denied, a defendant may obtain review without briefing the issues he raised in the trial court (*id.* at 8–9). However, when there is no evidentiary hearing and a defendant chooses to brief any claim, he waives review of those matters not briefed (*id.* at 9). Respondent contends Petitioner chose to brief only three of the four issues he raised in the trial court; therefore, he waived review of the omitted claim (Ground One in the instant federal petition) and, in doing so, failed to properly exhaust it (*id.* at 9).

The undersigned concludes that regardless of whether Petitioner exhausted this claim, he is not entitled to federal habeas relief. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

        1.     Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697. Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied. Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the

court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

Moreover,

> Trying cases is no exact science. And as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that calls for great precision or for a categorical approach. When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992). And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it can be shown that no reasonable lawyer, in the circumstances, would have done so.

Rogers v. Zant, 13 F. 3d 384, 386 (11th Cir. 1994); *see also* Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish that no competent counsel would have taken the action that his counsel did take); Chandler, 218 F.3d

at 1313 (issue is not what is possible, prudent, or appropriate, but what is constitutionally compelled) (citing <u>Burger v. Kemp</u>, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

As stated by the Eleventh Circuit:

> No absolute rules dictate what is reasonable performance for lawyers. [citing <u>Strickland</u>, 104 S.Ct. at 2065; other citations omitted]. "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." <u>Strickland</u>, 104 S.Ct. at 2065; [other citations omitted]. The law must allow for bold and for innovative approaches by trial lawyers. And, the Sixth Amendment is not meant "to improve the quality of legal representation," but "simply to ensure that criminal defendants receive a fair trial." <u>Strickland</u>, 104 S.Ct. at 2065.

<u>Chandler</u>, 218 F.3d at 1307. However, not every strategic decision passes constitutional muster. Whether a particular decision by counsel was a tactical one is a question of fact, <u>Hardwick v. Crosby</u>, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); <u>Jackson v. Herring</u>, 42 F.3d 1350, 1367 (11th Cir. 1995); <u>Horton v. Zant</u>, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, <u>Hardwick</u> 320 F.3d at 1163; <u>Jackson</u>, 42 F.3d at 1367; <u>Horton</u>, 941 F.2d at 1462. In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689.

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting <u>Strickland</u>, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. <u>Strickland</u>, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

### 2. Federal Review of State Court Decision

Petitioner raised this claim of ineffective assistance of counsel as Ground One in his Rule 3.850 motion (Ex. H at 4–6). In the state court's written opinion denying the motion, the court cited the two-pronged Strickland standard as the legal standard applicable to claims of ineffective assistance of counsel (*id.* at 26–27). Because the state court correctly identified Strickland as the governing precedent, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of Strickland.

The state court found as fact that Gerald Champagne, not Russell Edgar, actually prosecuted Petitioner's case (*id.* at 27). The court further determined that Petitioner failed to show that he was prosecuted based upon a prohibited classification, such as race or religion (*id.* at 27–28). Therefore, he failed to show that defense counsel acted deficiently or that he was prejudiced by counsel's failure to move to dismiss the charge based upon selective prosecution (*id.* at 28).

Upon review of the record, Petitioner has failed to show that counsel had a meritorious basis for moving to dismiss the charge based upon selective prosecution. To show selective prosecution, a defendant has the "heavy burden" of meeting two requirements:

> First, he must make a prima facie showing that he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted. Second, having satisfied the initial burden, he must then demonstrate that the government's selective prosecution of him has been constitutionally invidious. The invidiousness requirement is met if the defendant establishes that the government's selective prosecution is motivated by

> constitutionally impermissible motives such as racial or religious discrimination or
> his exercise of constitutional rights.

Owen v. Wainwright, 806 F.2d 1519, 1523 (11th Cir.1986) (per curiam); *see also* Jones v. White, 992 F.2d 1548, 1571–72 (11th Cir. 1993).

Initially, the record confirms that Assistant State Attorney Gerry Champagne, not Mr. Edgar, prosecuted the charge against Petitioner in this case (*see* Ex. B at 7–8, Ex. C).[10]  Furthermore, although Petitioner alleges one of his employees committed a crime but was not prosecuted, he does not allege that the employee committed the same act, that is, possessed a firearm after having been convicted of a felony.  Moreover, Petitioner failed to show that the State's prosecution was motivated by constitutionally impermissible motives, such as racial or religious discrimination or interference with the legitimate exercise of constitutional rights.  The fact that Petitioner's wife had initiated a civil proceeding and Bar complaint against Assistant State Attorney Edgar falls far short of meeting the heavy burden of establishing that Petitioner's prosecution was intended to interfere with Petitioner's legitimate exercise of his constitutional rights.  Therefore, Petitioner failed to show that defense counsel's failure to move to dismiss the information on grounds of selective prosecution was unreasonable, or that there is a reasonable probability that the trial court would have properly granted a motion to dismiss had counsel made one.  In light of this determination, Petitioner has failed to demonstrate that the state court's denial of his ineffective assistance of counsel claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of Strickland.[11]

---

[10] Assistant State Attorney Russell Edgar prosecuted the charges against Petitioner in Case No. 2000 CF 002456C.

[11] The court notes that in each of Petitioner's four ineffective assistance of counsel claims (Grounds One, Three, Four, and Five), he argues that trial counsel's alleged errors deprived him of effective assistance, as well as due process and equal protection of the law (*see* Doc. 8 at 5, 6, 9, 12, 13, 16).  However, Petitioner does not include any separate due process or equal protection analysis in the argument of his claims; rather, he argues only that counsel performed deficiently, and counsel's deficient performance prejudiced him (*see id.*).  The undersigned concludes that Petitioner's vague and conclusory references to due process and equal protection are insufficient to properly raise due process and equal protection claims independent of his ineffective assistance of counsel claims.  Additionally, as Respondent notes, Petitioner never fairly presented due process or equal protection claims to the state courts (Doc. 22 at 9).  Indeed, review of Petitioner's Rule 3.850 motion confirms that Petitioner argued only that trial counsel's performance violated his Sixth Amendment right, and he argued Strickland as the applicable legal standard (Doc. 22, Ex. H at 3–12).  Therefore, the undersigned concludes that the only claims asserted in Grounds One, Three, Four, and Five that are subject to federal habeas review are Petitioner's claims of Sixth Amendment violations based upon ineffective assistance of counsel.

B.      Ground Two:  Insufficient evidence to support a conviction.

Petitioner contends there was insufficient evidence to support his conviction because there was no evidence that he had actual possession of any firearm (Doc. 8 at 5).  Petitioner admits he and his wife were joint owners of the home where the firearms were discovered, but he assert his wife and son claimed ownership of the firearms (*id.* at 10).  Petitioner states one of the firearms discovered in his home was recovered by law enforcement while they were searching a bedroom occupied by Petitioner's son,[12] another was enclosed in a case inside a closet located in a shared master bedroom, and four other firearms were recovered from a locked safe inside the same closet (*id.* at 5, 10).  Petitioner contends on these facts, the trial court erred in failing to apply a "constructive possession" analysis to defense counsel's motion for judgment of acquittal (*id.* at 10).  Petitioner contends under the "constructive possession" analysis, the State was required to present sufficient evidence that he exercised dominion and control over the firearms or had knowledge of their presence in his home, and the State failed to do so (*id.* at 10–11).  Therefore, his conviction violates due process (*id.* at 11).

Respondent contends that although Petitioner presented a sufficiency of the evidence claim to the trial court and on direct appeal of his conviction, Petitioner presented it as only an issue of state law, specifically, Florida's constructive possession law and circumstantial evidence rule (Doc. 22 at 6–7).  Respondent contends Petitioner's claim in the state court did not even rise to the level of the claim rejected in Duncan v. Henry, 513 U.S. 365 (1995), where the Supreme Court held that a defendant's mere reference to due process is insufficient to notify a state court of the federal nature of a claim (*id.* at 7).  Therefore, Petitioner failed to properly exhaust the claim, and it is now procedurally barred (*id.* at 7, 9–10).

The state court record shows that the sole argument heading in Petitioner's brief on direct appeal of his conviction states:

**The evidence is insufficient as a matter of law to support the conviction on the charged count of possession of a firearm by a convicted felon because the State failed to provide sufficient evidence to prove that Appellant Schimmel had**

---

[12] Petitioner states his son maintained a bedroom in the home, but his son was not occupying the home at the time the firearm was discovered in his bedroom (Doc. 8 at 10)

Case No. 3:07cv521/MCR/EMT

**"dominion and control" over the firearm and, in the alternative, the circumstantial evidence used at trial did not refute a reasonable hypothesis of innocence.**

(Ex. D at 9). The text of Petitioner's brief cites only Florida statutes and procedural rules, the Florida Standard Jury Instructions in Criminal Cases, and Florida cases, none of which decided a sufficiency of the evidence claim on federal grounds (*id.* at 9–22). Petitioner's brief does not cite the Constitution or any federal case, nor does it reference federal due process rights. Furthermore, all of his substantive arguments address Florida law. Although Florida courts assess the sufficiency of the evidence under the standard applied in <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), the basis of Petitioner's argument in the state court was that there was no evidence of possession of the firearm, as the term "possession" is defined by state law. Alternatively, he argued that the evidence was insufficient under Florida's "circumstantial evidence rule," a rule which has not been adopted as the federal standard for claims of sufficiency of the evidence. Nothing in either of these arguments would have alerted the state court to the presence of a federal claim about due process. Thus, Petitioner failed to exhaust his federal claim. *See, e.g.*, <u>Pearson v. Sec'y, Dep't of Corr.</u>, 273 Fed. Appx. 847, 850 (11th Cir. 2008) (affirming district court's conclusion that Pearson failed to exhaust sufficiency of evidence claim; Pearson cited exclusively to state cases, and all of his substantive arguments addressed Florida law; none of the cases he cited were decided on federal grounds, and he did not otherwise indicate that he intended to raise federal claims; although Florida courts assess sufficiency of evidence under standard applied in <u>Jackson v. Virginia</u>, *supra*, the basis of Pearson's argument was that there was no evidence of reasonable fear on part of victim, as defined by state law; nothing in this argument would have alerted state court to presence of federal due process claim); <u>Burden v. Allen</u>, 304 Fed. Appx. 825, 826 (11th Cir. 2008) (affirming district court's conclusion that Burden failed to exhaust claim that juror's failure to disclose personal relationship with victim's family deprived him of state and federal constitutional right to fair trial; no federal claim existed within four corners of Burden's state petition, and nothing in state petition was sufficient to alert state court to federal nature of his claim; Burden's "passing reference" to federal law was merely "needle in a haystack"); <u>Cook v. McNeil</u>, 266 Fed. Appx. 843, 845–46 (11th Cir. 2008) (affirming district court's conclusion that Cook failed

to exhaust argument that conviction violated federal guarantee of due process where Cook cited exclusively to state cases in state court brief, and all substantive arguments addressed Florida law; although Florida courts assess sufficiency of the evidence under standard applied in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), tenor of Cook's narrow arguments that challenged characterization of his knife and sequence of his actions under Florida statute did not bring federal due process claim to attention of state appellate court).[13]  *But see, e.g.*, <u>McKinzie v. Sec'y, Dep't of Corr.</u>, 265 Fed. Appx. 858, 860 (11th Cir. 2008) (rejecting district court's conclusion that sufficiency of the evidence claim was procedurally barred where McKinzie argued in state court that State failed to meet its burden of establishing he carried a "concealed firearm," as that term was defined by state law, because "necessarily underlying the state court decisions was a determination that the evidence was sufficient to uphold a concealment conviction, a standard identical to federal sufficiency review.").

Furthermore, Petitioner would now be barred from raising his constitutional claim before the state court, since Florida procedural rules do not provide for a second appeal of a claim that could have and should have first been raised on direct appeal, and any further Rule 3.850 motion would be barred as successive.  *See* Fla. R. Crim. P. 3.850(f).  Moreover, to the extent Petitioner asserts a claim of cause for the procedural default based upon the fact that he is proceeding pro se (*see* Doc. 25 at 1–2), his claim is without merit, since he was not proceeding pro se in his direct appeal (*see* Doc. 22, Ex. D), and even if he was proceeding pro se, this does not establish cause.  *See* <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992).  Petitioner does not argue any other exception to the procedural bar.  Therefore, his claim is procedurally barred from federal review.

C.     <u>Ground Three:  Ineffective assistance of trial counsel based upon counsel's failure to allow trial court to make informed judgment.</u>

<u>Ground Four:  Ineffective assistance of trial counsel based upon counsel's failure to present exculpatory evidence.</u>

In Grounds Three and Four, Petitioner contends his trial counsel provided ineffective assistance by failing to call his wife and son as witnesses (Doc. 8 at 6, 12–14).  Petitioner states

---

[13] The undersigned cites <u>Pearson</u>, <u>Burden</u>, and <u>Cook</u> only as persuasive authority and recognizes that the opinions are not considered binding precedent.  *See* 11th Cir. R. 36-2.

defense counsel stated during opening statements that witnesses would be called to testify that ownership, access, and dominion of the weapons were that of others, not Petitioner (*id.* at 12, 14). Petitioner states his wife, Debbie Schimmel, and his son, Billy Schimmel, Jr., were available to testify (*id.*).  He states Billy Schimmel, Jr. would have testified that he was the actual owner of all weapons found in the home, and Debbie Schimmel would have corroborated that testimony and testified that the weapon found in her vehicle was her weapon (*id.* at 12).  Petitioner states defense counsel's failure to call these witnesses deprived the trial court of the ability to make an intelligent and informed judgment based upon all the available evidence and denied the court the "power to pardon" (*id.* at 12–14).  Petitioner argues there is a likelihood that the trial would have resulted in an acquittal if counsel had presented this testimony (*id.*).

Respondent concedes Petitioner exhausted his ineffective assistance of counsel claims in the state courts (Doc. 22 at 20).

### 1.      Clearly Established Supreme Court Law

The clearly established Supreme Court law governing claims of ineffective assistance of counsel is the two pronged <u>Strickland</u> standard described *supra*.  Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference.  <u>Chandler</u>, 218 F.3d at 1314 n.14 (citing <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512, 1518–19 (11th Cir. 1995) (en banc)).  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978).[14]

### 2.      Federal Review of State Court Decision

The record shows that Petitioner raised these claims as Grounds Two and Three in his Rule 3.850 motion (Ex. H at 7–10).  The state court found as fact that testimony was presented that firearms were found both in Petitioner's closet and in a safe inside Petitioner's bedroom (*id.* at 28). The court further found that at least one of the handguns found was proven to have been purchased by Petitioner, and a driver's license belonging to Petitioner was found inside the safe with the

---

[14] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

weapons (*id.*). Additionally, Billy Schimmel, Jr.'s ex-wife testified that the safe and the guns in question, with one possible exception, had never been in the home she shared with Petitioner's son (*id.*). The court further found that defense counsel was able to introduce, through prosecution witnesses, evidence that Petitioner's son made a statement to law enforcement to the effect of, "when will I get my guns back?" during execution of a search warrant (*id.* at 28–29). Two witnesses also testified that Petitioner was heard to say to his son in a telephone conversation that he would pay for damages to the safe resulting from having the lock drilled by a locksmith at the request of law enforcement (*id.* at 29). From these facts, the state court concluded that defense counsel clearly asserted the theory of defense that the weapons belonged to Petitioner's son (*id.*).

The state court additionally found as fact that defense counsel made a strategic decision not to call Billy Schimmel, Jr. and Debbie Schimmel as witnesses, as evidenced by defense counsel's statement in a response to one of the State's post-trial motions, "A tactical decision was made by the defense to have first and last closing, a decision which required sacrifice; that no evidence be admitted by the defense." (*id.* at 29–30). The court also found as fact that Petitioner was given ample opportunity to ask that those witnesses be called, but he left the decision to defense counsel (*id.* at 29). Further, when the decision was made not to call those witnesses, Petitioner was questioned by the court regarding this decision, and Petitioner expressed agreement with counsel's decision to refrain from calling the witnesses (*id.*).

As to the prejudice prong, the state court found that Petitioner offered no statement of specific prejudice other than to generally say that the decision not to call Debbie Schimmel and Billy Schimmel, Jr. deprived the court of the opportunity to make an "informed decision" and the opportunity to exercise its "power to pardon when trial counsel renew[ed] his motion for judgment of acquittal at the conclusion of trial." (*id.* at 30). Based upon these findings, the state court concluded that Petitioner failed to demonstrate that defense counsel performed deficiently and that he was prejudiced by counsel's failure to present testimony from Billy Schimmel, Jr. and Debbie Schimmel (*id.* at 30).

Petitioner has failed to present clear and convincing evidence to rebut the state court's factual findings. Furthermore, the findings are supported by the record. The trial transcript confirms the state court's findings with regard to the evidence adduced at trial ( Ex. C at 34–36, 39–44, 45,

50–54, 57, 69–70, 75–80, 102–18).  This evidence demonstrates that the trial judge (the factfinder in this case) heard evidence supporting the defense's theory of the case, that is, that the weapons belonged to Petitioner's son.  Indeed, defense counsel's motion for judgment of acquittal focused solely on the issue of the lack of evidence that Petitioner had knowledge and/or control of the firearms (*id.* at 120–61).  Further, defense counsel's tactical decision not to call defense witnesses in order to preserve first and last closing argument was a reasonable decision.  Moreover, Petitioner's assertions as to what his wife and son would have said if they had testified at trial are purely speculative and, therefore, insufficient to show a reasonable probability that the outcome of trial would have been different if they had testified.  Therefore, Petitioner has failed to establish that the state court's denial of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland.

      E.      Ground Five:  Ineffective assistance of trial counsel based upon counsel's failure to object and move for mistrial based upon prosecutorial misconduct.

      Petitioner contends his trial counsel provided ineffective assistance by failing to object to the presence and participation of Assistant State Attorney Russell Edgar at trial, or move for a mistrial (Doc. 8 at 15–16).  Petitioner states defense counsel was aware that Petitioner and his wife, Debbie Schimmel, had been involved in "adverse confrontations" with Russell Edgar, yet counsel permitted Edgar to assist the prosecuting attorney, Assistant State Attorney Champagne, and make argument to the trial court (*id.* at 15).[15]  Petitioner asserts Mr. Edgar sought vengeance against him, and Edgar's presence and participation influenced the trial judge, who was the same judge who presided over Petitioner's criminal trial in Case No. 2000 CF 002456C (the case involving organized fraud), which Mr. Edgar prosecuted (*id.* at 16).  Petitioner contends the trial court would have granted a motion for mistrial based upon Mr. Edgar's presence and participation (*id.*).

      Respondent concedes Petitioner exhausted this claim of ineffective assistance of counsel in the state courts (Doc. 22 at 22–23).

      1.      Clearly Established Supreme Court Law

---

[15] Petitioner states the confrontations involved Mr. Edgar's leaking information to the press regarding Debbie Schimmel's business, Backyard Sheds, Inc., which led to Mrs. Schimmel's filing a Florida Bar complaint and a civil case against Mr. Edgar (Doc. 1 at 15).

The Supreme Court standard for analyzing claims of ineffective assistance of counsel is set forth *supra*.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Four in his Rule 3.850 motion (Ex. H at 11–12).  The state court found as fact that there was no record evidence that Mr. Edgar participated in Petitioner's trial (*id.* at 30).  The court also found that Petitioner identified no specific instance of conduct by Mr. Edgar that would support a motion for mistrial (*id.*).  Based upon these findings, the court concluded that Petitioner failed to demonstrate deficient conduct by counsel, and he failed to show that the result of his trial would have been any different had counsel moved for mistrial based upon the fact that Mr. Edgar was present assisting prosecutor Mr. Champagne at trial (*id.* at 30–31).

Petitioner has failed to present clear and convincing evidence to rebut the state court's finding that Mr. Edgar did not participate in the trial; and there is no evidence of his participation in the trial transcript (*see* Ex. C).[16]  Furthermore, Petitioner failed to identify any specific conduct by Mr. Edgar that was allegedly improper.  Moreover, although Petitioner asserts Mr. Edgar's mere presence at trial influenced the trial judge, he has provided no support for this conclusory assertion.  In the absence of any showing of improper or otherwise objectionable conduct or comments by Mr. Edgar, and in the absence of any showing that Mr. Edgar's presence impacted the judge's ability to fairly judge the evidence at trial, Petitioner failed to demonstrate defense counsel's failure to object or move for mistrial was unreasonable, or that there was a reasonable probability of success if counsel had objected or moved for mistrial.  *See* United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (to establish prosecutorial misconduct, a two-prong test must be satisfied:  (1) the prosecutor's comments must have been improper, and (2) the comments must have rendered the trial fundamentally unfair).  The state court's denial of Petitioner's ineffective assistance of counsel claim

---

[16] Mr. Edgar participated in the sentencing proceedings, since they were held jointly with the sentencing proceedings in Case No. 2000 CF 002456C.

was, therefore, not contrary to or an unreasonable application of <u>Strickland</u>, nor was it based upon an unreasonable determination of the facts.[17]

    F.    <u>Ground Six: State courts denied Petitioner collateral and appellate review, thereby denying due process and equal protection of the law.</u>

Petitioner contends the trial court and the First DCA failed to address his ineffective assistance of counsel claims, thereby denying him due process and equal protection of the law (Doc. 8 at 17). Respondent contends this claim is unexhausted, factually erroneous, and not cognizable in federal habeas (Doc. 22 at 18–21).

It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state collateral proceedings. This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *See* <u>Anderson v. Secretary for Dep't of Corr.</u>, 462 F.3d 1319, 1330 (11th Cir. 2006) (affirming district court's denial of habeas relief based on claim that state court failed to hold evidentiary hearing on Rule 3.850 motion); <u>Spradley v. Dugger</u>, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam) (concluding § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach

---

[17] In his reply brief, Petitioner asserts that the cumulative effect of counsel's errors deprived him of his rights under the Sixth and Fourteenth Amendments (Doc. 25 at 5–6). Cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors. *See* <u>United States v. Barshov</u>, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); <u>Mullen v. Blackburn</u>, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero."); *see also* <u>United States v. Hall</u>, 455 F.3d 508, 520 (5th Cir. 2006); <u>Mancuso v. Olivarez</u>, 292 F.3d 939, 957 (9th Cir. 2002) (where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation); <u>United States v. Hardy</u>, 224 F.3d 752, 757 (8th Cir. 2000); <u>Angelone</u>, *supra*; <u>Moore v. Reynolds</u>, 153 F.3d 1086, 1113 (10th Cir. 1998); <u>United States v. Rivera</u>, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); <u>United States v. Conteh</u>, 234 Fed. Appx. 374, 2007 WL 1229043 (6th Cir. 2007). Thus, Petitioner must show error with respect to at least two of his individual claims. As previously discussed, none of the alleged errors of trial counsel, considered alone, approach the threshold standard of ineffective assistance of counsel. Taken together, their cumulative effect also falls far short of depriving Petitioner of effective assistance of counsel or a fundamentally unfair trial. Therefore, Petitioner is not entitled to federal habeas relief based upon his "cumulative effect" argument. *See* <u>Bronstein v. Wainwright</u>, 646 F.2d 1048 (11th Cir. 1981) ("[A] state trial must be so 'fundamentally unfair' as to amount to a denial of due process before federal habeas relief can be appropriately applied.") (internal quotation and citation omitted)); *see also* <u>Walls v. McNeil</u>, No. 3:06cv237/MCR, 2009 WL 3187066, at **30–31 (N.D. Fla. Sept. 30, 2009) (unpublished) (same).

appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief").

In the instant case, the state collateral proceedings where the alleged due process and equal protection violations occurred were not part of the direct review process of Petitioner's conviction. Therefore, Petitioner's due process and equal protection challenges to the process afforded him in the state collateral review proceedings, do not provide a basis for federal habeas relief. Furthermore, to the extent Petitioner contends that First DCA's affirmance of his conviction per curiam without written opinion violated his rights to due process and equal protection, he has failed to demonstrate that the Constitution requires a state court to reduce to writing its analysis and decision on direct review of a conviction, or that a state court's failure to do so violates the Equal Protection Clause. Therefore, Petitioner is not entitled to federal habeas relief on Ground Six.

V.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the amended petition for writ of habeas corpus (Doc. 8) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 9th day of August 2010.

/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

Objections  to  these  proposed  findings  and  recommendations  may  be  filed  within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).